**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____x

SCOTT TRENT,                                                      **COMPLAINT**

                    Plaintiff,                          **1:20-CV-00005**

-against                                                           **JURY DEMANDED**

PACE UNIVERSITY and FREDERICA "FREDDI" WALD.

                    Defendants.

_____x


Plaintiff, Scott Trent ("Trent"), by and through his attorneys, Roger S. Blank, P.C., hereby brings a series of claims against Defendants, Pace University ("Pace") and Frederica "Freddi" Wald, ("Wald") (hereinafter collectively referred to as, "Defendants"), of which the following is a statement:


## NATURE OF ACTION

1.     Plaintiff Trent brings this action seeking redress because he was continually subjected to sexual harassment, including sexually suggestive comments, intimidation, unconsented to sexual touching, and retaliation for refusing to submit to and gratify the sexual demands of Defendant Wald while Trent was employed by Defendant Pace.

2.     Defendant Wald was a senior employee of Defendant Pace and was entrusted by Defendant Pace with significant authority in the workplace.

3.     At all times relevant to this action, in violation of federal, state and local laws and regulations, Defendants created, fostered, promoted and perpetuated policies and practices that resulted in the creation of a work environment ravaged with frequent, pervasive, unwanted

1

sexual comments, advances, requests, and other similar harassing conduct, and retaliation for same when it was rebuffed by Trent.

4.      As a result of this conduct, Defendants Pace and Wald discriminated against Plaintiff Trent.

5.      As a result of this conduct, Trent brings this action pursuant to Title VII of the Civil Rights Act of 1964 § 7, 42 U.S.C. § 2000e et seq (1964) ("Title VII"), Title IX, Education Amendments of 1972, 20 U.S.C. § 1681-1682, subpart E, §106.51 ("Title IX"), the New York State Human Rights Law, N.Y. Executive Law § 290 *et seq*. ("NYSHRL"), the New York City Human Rights Law, and N.Y. Administrative Code § 8-101 *et seq*. ("NYCHRL"), seeking all damages available at law and in equity under those statutes, including but not limited to applicable liquidated damages, front pay, back pay, unpaid vacation and other leave pay, punitive damages, interest, attorneys' fees, and costs.

## VENUE AND JURISDICTION

6.      This Court has original jurisdiction to hear this Complaint and adjudicate the claims stated herein under 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. §§ 2000d-2, 2000e-5(f), this action being brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000d and 2000e et seq., Title IX, Education Amendments of 1972, 20 U.S.C. § 1681-1682, subpart E, §106.51; as well as New York State Executive Law § 296, and the New York City Administrative Code Title 8, Chapter 1 §8-107(1)(a), to redress and enjoin the discriminatory practices of defendants. This Court has jurisdiction to hear Trent's state law claims under the NYSHRL and NYCHRL pursuant to the Court's exercise of supplemental jurisdiction under 28 U.S.C. §13679(a).

7.      Venue is proper in this District by reason of 42 U.S.C. § 2000(e)-5(f)(3) and 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Trent's claims arose in this District.

## ADMINISTRATIVE PREREQUISITES FOR TITLE VII CLAIMS

8.      Trent timely filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), received a Notice of Right to Sue letter ("NRTS") from the EEOC, and has commenced this action within 90 days of receipt of the NRTS letter. Attached as exhibit "A"

9.      Trent filed a complaint with the New York State Division of Human Rights ("NYSDHR") against Defendant Pace for discrimination on the basis of sex.  Attached as exhibit "B"

10.      Trent filed a complaint with the New York City Commission on Human Rights ("NYCCHR") against Defendant Pace for discrimination on the basis of sex.  Attached as exhibit "C"

## PARTIES

11.      At all times relevant to this action, Plaintiff Trent was an employee of Defendants Pace and Wald.

12.      Defendant Pace University is an educational institution with its principal place of business within the District.

13.      Defendant Wald served as Vice President for Marketing & Communications and Chief Marketing Officer, thus an agent of Pace in a senior management position at Pace.

14.     Trent was employed by Defendants as Executive Director of Media Relations. Wald was the manager of the department in which Trent was employed.

15.      Defendants have offices located at One Pace Plaza, New York, N.Y. 10038.

16.     At all times relevant hereto, Defendant Pace was Plaintiff's employer within the meaning of 42 U.S.C. § 2000e-5, Title IX, the NYSHRL § 292 and NYCHRL § 8-102.

17.     Upon information and belief, Defendant Pace is engaged in commerce within the meaning of 42 U.S.C. § 2000e-5.

18.     Upon information and belief, at all times relevant to this complaint, Defendant Wald was an employee of Pace.

19.     The acts set forth in this Complaint were authorized, ordered and/or done by defendants', officers, agents, employees and/or representatives while actively engaged in the management and operation of defendants' business.

*Plaintiff*

20.     Trent is an adult male individual residing in the State of New York, he was employed by Defendants from on or about May 1, 2014 until August 22, 2017, when he was terminated.

*Defendants*

21.     Pace is a not-for-profit institution of higher education existing under the laws of the State of New York with its principal place of business at One Place Plaza, New York, New York 10038 within this judicial district.

22.     During the relevant time period, Wald was an individual engaged in business in this judicial district. Wald is sued individually in her capacity as a Senior Manager and agent of Pace.

23.     On information and belief, Wald resides at 975 Park Avenue, New York, New York 10028 in this judicial district.

24.     On information and belief, during the relevant time period, Wald in her capacity as a Pace supervisory manager, controlled significant functions of Pace.  She determined the work assignments, supervised employees, including Trent, promoted Pace employees, established employee schedules, had the authority to hire and terminate employees, and was responsible for marketing Pace to the public, including but not limited to attracting prospective students on behalf of Pace and growing the number of enrolled students.

## FACTUAL ALLEGATIONS

### DEFENDANTS REPEATEDLY SUBJECTED PLAINTIFF TO A HOSTILE WORK ENVIRONMENT, SEXUAL HARASSMENT AND GENDER BASED DISCRIMINATION

25.     On or about May 1, 2014, Trent was hired by Pace as Executive Director of Media Relations.

26.     From the onset of Trent's employment and continuing through his termination on August 22, 2017, Wald exhibited and made her sexual interest in Trent known to Trent and his co-workers.

27.     Beginning in Trent's first week at Pace, and continuing throughout the entirety of Trent's employment, Wald would, in closed door meetings with Trent in her office, his office, conference rooms, and elsewhere, and in meetings including other staff, have her blouse revealingly unbuttoned and suggestively position herself so that Trent would have to observe she was not wearing undergarments, either above or below the waist.  Wald at times would sit in a position across from Trent, seductively exposing herself, and would at other times sit next to him

and touch his leg to grab his attention, wherein he would then be aware of and observe her raised skirt or her excessively unbuttoned blouse. This occurred hundreds of times on a frequent and recurring basis, both in the office and at outside events.

28. The aforementioned activities engaged in by Wald made Trent feel uncomfortable and embarrassed. This was obvious and known to other staff, and Trent was the focus of rumor, speculation and gossip by his colleagues and peers, given Wald's obvious sexual obsession with Trent.

29. Wald regularly initiated conversations regarding sex, relationships, her interest in experimenting with women and group sexual encounters, and other topics wholly inappropriate in a work setting with Trent. Wald routinely discussed body parts and genitalia, sexual acts, and the sexual habits and conduct of her husband and father, and former colleagues and employers.

30. To entice Trent, Wald would regularly wear inappropriately revealing attire in Trent's office, continually leaning unnecessarily close to Trent, balancing a hand on his shoulder, and brushing up against him to read information displayed on his computer screen. Given their frequency and the fact that Wald did not engage in such behavior with other staff, Trent considered these to be unmistakable sexual overtures intended to elicit a sexual response, but that left him feeling pressured, uncomfortable and violated, and suggested that Wald was far more interested in sex than in addressing the needs of the workplace.

31. At Pace-sponsored events Wald routinely made inquiries into Trent's personal life and sexual history, leaving Trent feeling guarded and apprehensive, and wanting to avoid interacting with Wald in such settings, so as to spare him embarrassment and ridicule.

32. Wald repeatedly stated to Trent in sum and substance that he would succeed her in her position, provided that he pleased her, satisfied her cravings and made up for the

6

deficiencies she was experiencing in her marriage.

### *The Sexual Surrogate Inquiry*

33.     Starting in May 2014 and repeatedly thereafter, Wald unsolicitedly informed Trent that she was unhappily married, shared intimate details with him about her husband's infidelity and how she wanted to pursue marriage counseling with her husband, but he refused to participate.

34.     Beginning in November 2016 and continuing into the Summer of 2017, Wald repeatedly and in front of Pace staff requested that Trent replace her husband as her sexual confidant and participate in marriage counseling with Wald as her "surrogate" husband, citing intense sexual chemistry that she vocally believed existed with Trent. Unnerved and shaken by Wald's open expressions and invitations, Trent repeatedly rejected such requests.

35.     In the spring of 2017, Wald overheard a conversation that included Trent and Pace colleagues about outings and events that had taken place the previous evening, and his own comments about dining at a Brooklyn Heights restaurant.  Although she was not a party to the conversation, Wald inserted herself in the conversation and interjected that she wanted to go on a "date night" with Trent, like she had just overheard him describe.

### *The 2015 Office Holiday Party*

36.     During the 2015 office Holiday Party, Wald displayed inappropriate sexual affection toward Trent, standing behind him while he was seated at a table talking with staff. Wald draped her arms over Trent's shoulders so that her hands were on his chest, as she rocked back and forth, rubbing up against him from behind.  Wald indicated she liked his suit and asked

what brand it was, as she ran her hands across the fabric.  Wald stated to other Pace employees present that Trent was the best dressed person in the office, and that she found it attractive that Trent put such effort into his personal appearance and presentation.  This was an admitted fixation of hers that endured throughout his employment, Wald also commented that Trent smelled good to her, dipping her head to smell Trent's hair.   Wald also expressed that she could always tell when Trent had been in the office from the smell of his cologne.  She asked him the name of the cologne and how to spell it. After Trent informed her it was Gauthier and she was unable to reiterate it back, Wald stated in sum and substance that she had consumed too much alcohol to accurately remember that.  At the conclusion of the evening, a group photo was taken during which Wald unsolicitedly and without warning, kissed Trent on the cheek during the photo.

37.     On information and belief, Defendants Pace and Wald possess a copy of the aforementioned photo.

38.     Trent attempted to deflect her sexual advances so as not to draw attention at the office Holiday Party, or incur the wrath of Wald, which would reveal itself when she felt her demands were not being addressed as desired.

39.     As a result of Wald's actions, Trent felt sexualized, emotionally stressed, overwhelmed, embarrassed and annoyed.  Trent was worried for his reputation and professional credibility, that other staff members believed he was having a sexual relationship with his boss, Wald. In fact, no such relationship existed, nor was one desired by Trent, who affirmatively rebuffed Wald's overtures.

### *The 2016 Sexual History & Threesome Inquiry*

40.    At a December 21, 2016 Office Outing at the Beekman Hotel, Wald opened

conversation with Trent and Pace staff by professing her interest in having a sexual encounter

with a woman, and grilling Trent and others present about their past sexual experiences. Wald's

questions focused specifically on whether they had ever engaged in sexual activity with multiple

partners at the same time, colloquially referred to as a "threesome." Wald's manipulation of the

conversation, grossly inappropriate sexual disclosures, excessive focus on Trent, and the fact no

other men had been invited by Wald, other than Trent no male office personnel were present, left

no doubt that he was her intended male party in the sexual scenarios she described and professed

she fantasized about. Trent was left startled, embarrassed, stressed and extremely uncomfortable

by Wald's direct, open and aggressive articulation of her sexual desires. He felt exceptionally

distraught by this bold escalation in Wald's overtures, and he feared the private communications

she would subsequently initiate

41.    After Wald left event, Trent spoke with Pace Assistant Vice President Leila

Franchi, stating "I feel dirty" in reference to being questioned by Wald as he was.  On

information and belief, AVP Franchi is a mandatory reporter under law and Pace policy.

42.    In or about May/June 2016 and again in August/September 2016, Trent received

two Facetime video calls from Wald. When the first call was opened, Wald was nude and barely

clothed the second time.  In both instances, Trent immediately terminated the calls and would not

accept, answer, or return any Facetime call thereafter.

43.    Trent was startled, shocked and repulsed at seeing his boss nude.   It created

feelings of fear that he would incur Wald's wrath if he didn't participate in the video calls and

anxiety regarding the stability of his employment, since he knew he would never engage in the

sexual relationship Wald was making every effort to initiate.

44.     As a result of the stress created by these calls and in an effort to discourage future calls from Wald, Trent began the habit of covering up the inward-facing lens of his mobile phone with painter's tape so that if Wald again attempted a Facetime call, she would be unable to determine if Trent was on the receiving end or able to visually receive a video call from her.

45.     For Trent's birthday in July 2016, Wald gave him a bottle of Veuve Clicquot champagne.  The gift was presented in a powder blue gift bag and accompanied by a handwritten note that read, "We'll celebrate later."  For Trent, Wald's gift of alcohol and her promise of a private celebration had nothing to do with his birthday and was simply another attempt on her part to lure him into a sexual encounter.

46.     In December 2016, Wald called a handful of staff into Trent's office and presented him with a set of cufflinks as a Christmas gift.  In the presence of other staff, she detailed how she selected and purchased them while dining out with her husband, and insisted Trent provide her with "a personal lesson on how to put these on and take them off."  She then directed him to verbally instruct her as she put the cufflink on his shirt-cuff and then removed it. Trent felt humiliated and emasculated that Wald had assembled an audience, giving her a convenient excuse to have physical contact with him, again making him the center of attention in a sexual way.  Given Wald's obsession with Trent's clothing, he was conscious of the significance in her gift and feared her wrath if he didn't wear them and didn't reciprocate with a gift for her.

### *The Text Messages Soliciting a Hotel Rendezvous*

47.     In late 2016, taking advantage of her husband and daughter being out of town, according to Wald.  Wald sent Trent a series of text messages inviting him to meet for a sexual liaison at a hotel. The number and structure of the messages were consistent with those she typically sent while consuming alcohol.  Exasperated, embarrassed and annoyed by the inappropriate, after-hours effort, Trent knew that Wald was less likely to retaliate when drinking, and he declined her invitation.

> Trent:  "Freddi, this is NOT going to happen. Go sober up and I'll forget this happened."
> Wald:  "it's an amazing hotel. Meet me there.. We'll have fun Scott!"
> Trent:  "NO MEANS NO, FREDDI! You've got to stop this!"
> Wald:  "you know you want this scott! i know you feeel it.  we.ve wanted this for a long time (*insert heart emoji here*)" *(ending with a heart emoji rather than period after the word time) Spelling and capitalization appear as in the original.*

This was the second time in 2016 Wald had attempted to lure Trent out via text message to meet for sex at a hotel.

### *The Staff Outing at Gild Hall Hotel as Cover for an Intended Sexual Liaison*

48.     At a September 2016 staff outing organized by Wald and held in the private lounge at the Gild Hall Hotel, she insisted on sitting next to Trent.  Wald proceeded to touch him intimately and inappropriately throughout the event, continuously placing her hand on his hand and leg, rubbing the cuff of his sleeve, and brushing his tie while stating that she liked the color. She also remarked several times that the hotel had "rooms available if anyone is interested," looking directly at Trent each time. Invitations sent by Wald to staff expressly prohibited recording of the event or posting any video to social media.

49.     At the conclusion of the Gild Hall staff event, Wald, pressured Trent to remain and have drinks with her at the hotel bar, wherein she again discussed the deficiencies in her marriage, made blatant sexual overtures, and pressured Trent to join her upstairs at the hotel for purposes of a sexual encounter. At one point while at the bar, Wald's husband called and she told him she was still at the office and likely wouldn't be home for several hours.

### The Sexual Seduction Lunch at the Beekman Pub

50.     On October 6, 2016, under the guise of a business lunch, Wald took Trent to the Beekman Pub, located in close proximity to Pace.

51.     Wald selected a very private booth, in an unused private room reserved for parties and special events in the rearmost area of the building, and where there were no patrons or waitstaff assigned at the time.

52.     Wald attempted to steer her interaction with Trent toward an intimate, physical relationship.

53.     Trent adamantly rejected Wald's advances and in response, Wald informed Trent that his employment was terminated.

54.     When Trent and Wald returned to their office, Trent began to pack his things and inform colleagues that he had been terminated by Wald.

55.     Wald subsequently told Trent to wait, as she had changed her mind.  She then choreographed his interaction and email exchanges with Human Resources Associate Vice President Betsy Garti, so as to conceal her motive and the true circumstances of what had occurred, and explain to the staff why Trent had announced a termination.

56.     Trent, desperate to save his job, complied with Wald's instructions, including writing a letter to Wald indicating how important his job was to him.

12

57.     Wald later apologized to Trent for her actions, re-hired him that evening and repeatedly ordered him not to disclose or discuss what had happened to any University Relations staff or other Pace employees.

58.     Wald's efforts to seduce Trent under the guise of a business lunch left Trent shaken, depressed, anxious, and grappling with the disheartening prospect of having to engage in sexual relations with his boss as a condition of keeping his employment.

59.     Later in October 2016, after the aforementioned sexual seduction lunch at Beekman Pub and the events thereafter, in a highly visible and hostile act of retaliation against Trent for spurning Wald's sexual advances, Wald stripped Trent of his executive office, office furniture, and essential equipment, including but not limited to his bookcases, workstation desk (replaced with a desk half its size), and reduced his two installed computer screens to one. The much smaller office he was moved into had insufficient space to store essential files, and he was forced to use unsecured filing cabinet space outside of, and well away from his office.  Despite his duties and position as the second ranking member of University Relations at the time, Wald relocated Trent to a windowless office less than half the size, in an area occupied by entry-level and support staff.  She then awarded Trent's large executive office to her assistant, an administrative support employee.

60.     In punishing Trent for his refusal to have sex with her, Wald's retaliatory action made it impossible for him to conduct confidential meetings and calls, plan and execute essential presentations and campaigns, assemble multiple staff from other offices in one room, or protect sensitive materials and restricted files. Wald's retaliatory action adversely impacted the ordinary conduct of PR-related planning and activities, compromised key university functions and efforts, diminished Trent's professional standing, credibility and perceived authority, undermined his

reputation, and created enormous obstacles in the execution of university-related business. Wald's unlawful act of vengeance and retribution against Trent for his refusal to participate in a sexual relationship left him psychologically traumatized, despondent, severely depressed, defamed and emasculated.  Fearful that she would take additional hostile, vindictive action against him, Trent was plagued by an overwhelming sense of anxiety, unable to eat or sleep, and losing nearly 20 pounds as a result. His mood and outlook shifted markedly, and he dreaded Wald's calls, emails and texts, anxious that they would bring more propositions for sex, more punishment for rejecting her advances, or both.  As a result, he aggressively sought out opportunities to placate Wald and avoid her wrath, while searching out means and methods to protect him from being forced into sex with her.

### *The December 2016 Art Gallery Incident*

61.     Feeling pressured and seeking to avoid Wald's wrath, Trent agreed to accompany her to a December 1, 2016 party at an East 79th Street art gallery operated by two of Wald's closest female friends.  Wald became quickly and noticeably intoxicated at the event, groping Trent repeatedly, attempting to kiss him, and at one point, following him into the bathroom.  Her efforts to engage him in sexual activity were thwarted by a University Relations staff member Trent had arranged to accompany him to the event for that express purpose.  At one point, Wald remarked to Trent and the Pace staff member, "No one will be having sex in that shower tonight!"  Shortly after, Trent discovered that the shower in the gallery bathroom was being used as temporary storage for framed artwork.

### *The December 2016 University Relations Holiday Party*

62.     At the 2016 UR Holiday Party, Wald made open, obvious and aggressive sexual advances toward Trent.  She repeatedly attempted to undress Trent in full view of University Relations staff, including removing his tie and unbuttoning his shirt.  Wald seductively and aggressively groped his chest and buttocks.  She also pressed herself against Trent and put her hands and arms around his body.  Wald had in her possession at the party a miniature, red Santa Claus hat.  At one point during the interaction with Trent, Wald stated in sum and substance that although Trent doesn't wear hats on his head, she thought he might wear hats on his "little head."  It was obvious to Trent that Wald was referencing his genitalia.  In the same interaction, noting the size and shape of the Santa hat, Wald likened it to a diaphragm (female contraceptive device).  Looking at Trent, Wald raised her eyebrows, smiled and expressed that an advantage of menopause is no longer needing to use a diaphragm.  Trent construed this as yet another unmistakable sexual overture.

63.     As a result of Wald's behavior, Trent was repeatedly approached by University Relations staff and other Pace employees inquiring if he and Wald were engaged in a sexual relationship.

64.     Wald's inappropriate conduct made Trent the target of ridicule, gossip and speculation as to the actual nature of his relationship with his supervisor, Freddi Wald.

65.     Wald's actions at the 2016 Christmas party left Trent feeling humiliated and embarrassed, and renewed his fear of incurring her wrath in continuing to reject her overtures.  In fact, in response to rebuffing Wald during this event, Trent was verbally ridiculed by her in front of his co-workers and other Pace staff and administrators.  Wald compounded this by ridiculing him again in a Pace email sent to department staff at 9:17am the next day.

66.     In January 2017, Wald called Trent and another male University Relations staff member into her office, requiring them to pose for a photo which Wald then digitally transmitted to a woman she identified as her best friend.  In that communication and again in Wald's office two days later, Wald referred to Trent and the other male employee as her "boyfriends" and "boytoys."  Wald subsequently posted that photo to her personal social media accounts.   This same conduct was repeated in June 2017, wherein Wald again called Trent, along with the same male Pace employee, into her office, photographed them, and once again referred to them as her "boyfriends" and "boytoys."

67.     The aforementioned "boyfriend" and "boytoy" incidents were demeaning and emasculating to Trent, who was left feeling sexualized and treated like a pet and "piece of meat."

68.     On January 16, 2017, Wald sent Trent an email stating she had some "crazy stuff" she wanted to share with him privately.  Later that evening, Wald telephoned Trent and shared sexually explicit gossip about other Pace employees, including but not limited to the newly-selected, incoming university president, Marvin Krislov.

69.     On the evening of Friday, January 27, 2017, Wald sent a number of emails to Trent from four separate accounts.  In one of those e-mails, specifically sent after 8:00pm, Wald said "Getting thru my cocktail – then will write…watchout!!"

70.     Later that same evening (January 27, 2017), Wald sent an email at 9:34pm and opened with *"I really wanted to apologize to you and beg you not to post this exchange on FB (Facebook)."*  She went on to say that with Trent, she's *"like a maniacal dog not letting go of a bone"* and that Trent *"did not deserve my crazy mood and wrath."*  Wald admitted to her *"obsessiveness"* with Trent and predicted their *"friendship"* and *"interesting feelings"* would *"last wayyyyyy beyond Pace."*  She also admitted to feeling a *"shocking, mysterious,*

16

*heartbreaking, repressed, raging feeling"* she struggles with when *"losing a close friend and lover."* In that same email, Wald made note of Trent's political affiliation and her willingness to "forgive him" for it because his sartorial choices *"upgrades your brand and redeems your worth to me*."

71.    Wald had a self-professed sexual obsession with Trent, that she voluntarily revealed, admitted and acted upon at every opportunity; in person, via email, telephone and text.

72.    Wald was so unrelenting in her pursuit, Trent found it nearly impossible to escape her, given her incessant communications via text, telephone and email, even during periods of time he was away from Pace. Wald's conduct and communications occurred nightly, after working hours, on weekends, at all hours of the day and night, on holidays, and even on the exceptionally limited vacation period Trent was allowed to take

73.    During one of Wald's more obsessive outbursts, Trent was traveling underground for approximately 20 minutes via the New York City subway, en route to meet Wald. While aware of this and also aware that cellular signals were not available in the NYC subway at that time, Wald still repeatedly attempted to contact him via telephone and text. When Trent exited the subway and reestablished telephone cellular service, he was immediately contacted by Wald, who verbally terminated Trent due to his unavailability while underground. Within the span of approximately 30 minutes, Wald reversed her decision and rescinded his termination, but ordered Trent to limit his future travels to surface transportation-only.

74.    Wald's obsessive behavior caused Trent embarrassment, anxiety, depression, emotional distress, and severely and adversely impacted his personal, outside relationships. As a result of the emotional toll Wald's conduct exacted on Trent, he began to suffer severe intimacy issues with his then-romantic partner.

### *The March 2017 Accidental Student Death by Autoerotic Asphyxiation*

75.     Upon learning of a student death by autoerotic asphyxiation (a state of asphyxia intentionally induced so as to heighten sexual arousal during masturbation[1]), Trent located Wald, who was in the office of Assistant Vice President Leila Franchi, to alert her to the death and detail his recommendation as to how Pace should respond to the press if media became aware of the incident and decided to cover it.

76.     After being briefed on the aforementioned incident, Wald, in the presence of AVP Franchi, inquired of Trent if he had ever engaged in such masturbatory activity himself, if he knew others that did, and if he had insight into how common a practice this activity was among men in general.

77.     During the entirety of Trent's employment with Defendants, Wald expressed to Trent that her husband had experienced a declining interest in engaging in sexual activity with her and, instead, he preferred to watch.  Wald expressed her resulting frustration with this circumstance between her and her husband, and referenced the use of sex toys and vibrators as a remedy.

78.     In April 2016, Wald entered Trent's office while he was engaged in a phone call. Upon examining items displayed on his office shelves and noticing a military prop from a science fiction film, Wald commented on it and inquired if the item was a vibrator sex toy.  At the time of the incident, Trent was on a conference call with a New York 1 news reporter and had muted the telephone call.  When Trent unmuted the telephone call, enabling him to speak with the reporter, Wald began to mimic the buzzing sound of a vibrating sex toy.  While no reasonable person would mistake the film prop for a sex toy, Wald's conduct constitutes another

---

[1] Merriam-Webster Dictionary definition.

18

example of her sexual harassment of Trent. This unprofessional behavior caused Trent

embarrassment and worry that his relationship with that reporter and media outlet might have

been adversely affected by Wald, thereby also adversely affecting his ability to perform his job

functions and liaise with members of the press.

### The June 2017 Spirit of Pace Awards ("SOPA") Event

79.    In June 2016. Wald and Trent attended Pace's annual SOPA fundraising dinner at

the American Museum of Natural History Pace.

80.    Just before the dinner, Wald insisted that Trent sit next to her, and pulled him

away from a conversation he was engaged in, leading him to her table.  Wald openly stated that

she never brought her husband to these events so as "not to spoil her fun."  Approximately ten

other people were seated at the table, including other senior staff from Pace.

81.    Throughout the evening, Trent and others observed Wald consume quantities of

alcohol, after which she became loud and animated.  During this time, she orchestrated group

photos, insisting that Trent be at her side and placing her arm possessively around him, causing

him to feel like chattel.

82.    Wald engaged in loud, sexually charged conversation directed at Trent and others

seated at the table.  She made derogatory comments about other Pace staff, and expressed

surprise and disapproval when informed that a senior staff member was in a biracial relationship.

While seated next to Trent, Wald would repeatedly rub Trent's leg and touch his arm.  At one

point, Wald attempted to force wine on Trent, who avoids alcohol at official functions,

encouraging Trent to "loosen up."  Having informed Wald of his practice at official events, Trent

19

took her effort to be yet another attempt by Wald to lower his inhibitions in the hope of drawing him into a sexual encounter.

83.     Also, at the event and seated at a neighboring table was Robert G.M. Keating ("Keating"), Pace's Vice President for Strategic Initiatives and Senior Advisor to the University President.

84.     On information and belief, Vice President Keating is a mandatory reporter under law and Pace policy.

85.     At one point during the event, a Pace staff member informed Trent that Keating wanted to speak with him.  Trent approached Keating, who, alarmed by Wald's behavior, stated that Wald was "out of control" and her sexually-focused conversation was inappropriate. Keating asked Trent to rein Wald in and restrict her ability to order more wine.

86.     Later Keating approached Trent's table himself, leaned into Wald, and stated, "My dear, I'm suspending the First Amendment at this table.  We have guests whose checks haven't cleared yet."

87.     Trent happened upon Keating later that same night, at which time Keating stated to Trent, "My boy, I don't envy you, herding feral cats in estrus."[2]

88.     Trent left the event, exhausted, emasculated and despondent as a result of Wald's conduct, and dreading the calls and texts he knew he would soon receive from her.  The event marked another example of Wald's sexual harassment of Trent and the hostile work environment she maintained, senior management's awareness of Wald's conduct, and Pace's refusal to do anything about it.

---

[2] Oxford Dictionary: A recurring period of sexual receptivity and fertility in many female mammals; heat.

***Pattern and Practice of Gender-Based Discrimination by Wald and Pace***

89.     In an October 13, 2016 memo from Wald to Pace's Operations Committee, Associate Vice President for Human Resources Betsy Garti, the Management Council, and the School Marketing Directors, Wald announced her reorganization of University Relations, including eight (8) staff promotions that were made as part of the reorganization.  All of the promotions went to female members of the staff.

90.     In separate action, where eight (8) staff members were forced out of University Relations or outright terminated by Wald between May 1, 2014 and Trent's termination on August 22, 2017, seven (7) were male—including Trent.

91.     Of those seven (7) male employees who involuntarily left University Relations, all but one were replaced by female employees.

92.     On information and belief, after Trent's termination, he was replaced as Executive Director of Media Relations by a female who possessed substantially less experience, yet was paid more than Trent was paid.

93.     On information and belief, Betsy Garti, Pace's Associate Vice President for Human Resources, was aware of and implicitly endorsed the gender discrimination perpetrated by Wald, as staff hiring, promotions and terminations were processed through AVP Garti's department.

94.     Wald enforced gender discrimination in University Relations via her nominations for "Setting the Pace" and "Fast-Track Management," two intensive, year-long management development programs offered by the university and designed to cultivate leadership ability. Wald promised to install Trent as her successor, provided he "satisfied (her) needs sufficiently."

Wald ultimately refused to nominate Trent or any male employee to participate in the leadership programs.

95.     Wald would submit just one nominee per program each year, and she insisted the nominees be female.  In retaliation for rejecting her sexual advances, Wald refused Trent's requests to participate in "Setting the Pace" and "Fast-Track Management" in 2014, 2015 and 2016, and instead offered nominations for both programs to his female subordinate in 2016, and other female members of University Relations in the other years, including female members of University Relations who had expressed no interest in the training programs, over males who had expressed interest in the programs.

96.     In October 2016, Wald retaliated against Trent for rejecting her sexual overtures by taking away his executive office and giving it to a lower-level female employee; further detailed in paragraph 44.  From that time and continuing until relocating to new offices in June 2017, all University Relations executive offices were occupied by female staff, even though there were higher-ranking, senior male employees in the department, including Trent.

97.     On information and belief, female University Relations staff members were allowed to work flex hours, leave early, work from home, and use their vacation and personal time at will.  Trent was repeatedly denied this, with leave requests denied, limited, or approved and rescinded, and required to work nights, weekends and holidays.  On information and belief, female staff members were not similarly restricted.  At the time of his termination, Trent had accumulated more than five (5) months of paid leave, totaling approximately $75,000 in salary and benefits, that he wasn't allowed to use, nor has he been compensated for.

98.     Wald routinely assigned Trent projects unrelated to his actual job responsibilities, including extensive work on Wald's outside personal and business activities that

were not connected in any way with her Pace University position, all while still holding Trent responsible for his Pace University duties and deadlines.   On information and belief, Wald did not require female members of University Relations staff to work on projects outside of their responsibilities or unrelated to the university.

99.     Wald required Trent to be available at all hours of the day and night, and on weekends holidays, and periods when the university was closed, while on information and belief, female members of his department were only required to work 35-hour work weeks.

100.     On information and belief, males in the University Relations department were regularly diminished and verbally disparaged, given disproportionately higher volumes of and more difficult work, and with shorter deadlines.  Female members of University Relations were not required to be available after hours or on weekends, as Trent was.

101.     So pervasive was Wald's sexual harassment of Trent, the hostile work environment she created and forced upon him, and the unrelenting, unreasonable and unrealistic work schedule she required Trent to meet during his tenure at Pace, he was forced to seek continuing professional psychological counseling as an essential means to survive the toxic and unbearable stress created by Wald's unlawful, actionable misconduct.


**DEFENDANT PACE FAILED TO TAKE STEPS TO PREVENT AND REMEDY THE HOSTILE WORK ENVIRONMENT AND SEXUAL HARASSMENT PERPETRATED BY WALD**

102.     After receiving the aforementioned e-mail of January 27, 2017, Trent submitted a copy of same via interoffice mail to Pace Associate Vice President for Human Resources Betsy Garti.  Thereafter, Trent contacted AVP Garti to schedule a meeting with her to discuss Wald's unrelenting harassment and sexual obsession.

103.    On information and belief, AVP Garti has a personal friendship with Wald.

104.    AVP Garti would not make herself available to meet with Trent to address Wald's sexually obsessive and harassing behavior directed at him.

105.    Although, Trent was never afforded the opportunity to meet with Human Resources AVP Garti, Trent did have regular conversations with Robert Keating, Pace's Vice President for Strategic Initiatives and Senior Advisor to the University President.  During these conversations, Mr. Keating was made aware of Wald's behavior directed at Trent.  During these conversations, Mr. Keating would refer to Wald as "that lunatic" and "that nutjob."  Trent was also present during occasions were Mr. Keating would describe Wald to other senior staff at Pace using the same terminology as he had expressed to Trent.

106.    On information and belief, Vice President / Senior Advisor Keating, is a mandatory reporter under law and Pace policy.

107.    Trent also had regular conversations with Pace Assistant Vice President for Government and Community Relations Vanessa Herman, regarding Wald's behavior toward Mr. Trent.

108.    On information and belief, AVP Herman, is a mandatory reporter under law and Pace policy.

109.    Pace Associate Director for University Relations Cara Cea, was a first-hand and frequent witness to Wald's harassment, discrimination and retaliation directed at Trent, and the hostile work environment Wald fostered and maintained.

110.    On information and belief, Associate Director Cara Cea, is a mandatory reporter under law and Pace policy.

111.    Defendant Pace knew or should have known about Wald's sexual harassment of Trent.  Senior management was aware of but neglected to take any reasonable or appropriate corrective action.

### *Trent's Termination*

112.    On August 22, 2017, Trent was called into a meeting with Wald and Director of Employee & Labor Relations Bernadette Baumann and terminated.

113.    Trent was not provided a reason for such action in written form as is the policy and practice of Pace.  Trent was only informed by Wald that said action was being taken due to "subpar performance."

114.    Trent had never received any prior written notifications of any deficiency in his work performance, and in fact had received repeated written praise from Wald regarding the fulfillment of his employment duties.  In addition, Trent received multiple salary increases for his superior work performance – raises that Wald requested and secured at her own inclination and initiative, without any prior knowledge of, or request by Trent.

115.    It is apparent that Trent's termination was a direct and proximate result of his continued rebuffing and refusal to gratify the sexual desires of Wald.

116.    Defendants actions violated Trent's rights under Title IV, Title IX, New York State Executive Law § 296, and the New York City Administrative Code Title 8, Chapter 1 §8-107(1)(a) to be free from gender-based discrimination in employment; and to be free from sexual harassment and retaliation in an employment environment.

## Count I

### *Title VII of the Civil Rights Act of 1964, as Amended – Sexual Harassment Against Pace*

117.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs as if set fully herein.

118.    Defendant Pace discriminated against Trent in connection with the terms, conditions and privileges of his employment on the basis of his gender and retaliated against him in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq.

119.    Defendant Pace subjected Plaintiff to a severe and pervasive hostile work environment and failed to address or remedy Plaintiff's sexual harassment.  Defendant's actions violated Title VII, 42 U.S.C. §§ 2000e et seq.

120.     As a result of Defendant Pace's discriminatory acts, Plaintiff has suffered pain and suffering and severe emotional distress.

121.    Defendant Pace's conduct was intentional, willful, deliberate and in callous disregard of Trent's rights.

122.    By reason of defendants' discrimination and retaliation, Trent is entitled to all legal and equitable remedies available under Title VII.

## Count II

### *Title IX, Education Amendments of 1972, as Amended*

123.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs as if set fully herein.

124.    Defendants discriminated against Trent in connection with the terms, conditions and privileges of his employment on the basis of his gender and retaliated against him in

violation of Title IX, Education Amendments of 1972, 20 U.S.C. § 1681-1682, subpart E,
§106.51.

125.    Defendant Pace subjected Plaintiff to a severe and pervasive hostile work
environment and failed to address or remedy Plaintiff's sexual harassment.  Defendant's actions
violated Title IX, Education Amendments of 1972, 20 U.S.C. § 1681-1682, subpart E, §106.51.

126.     As a result of Defendant Pace's discriminatory acts, Plaintiff has suffered pain
and suffering and severe emotional distress.

127.    Defendant Pace's conduct was intentional, willful, deliberate and in callous
disregard of Trent's rights.

128.    By reason of defendants' discrimination and retaliation, Trent is entitled to all
legal and equitable remedies available under Title VII.

129.    By reason of defendants' discrimination and retaliation, Trent is entitled to all
legal and equitable remedies available under Title IX.

## Count III

### *The New York State Human Rights Law – Sexual Harassment Against Pace and Wald*

130.    Plaintiff realleges and incorporates herein by reference each and every allegation
contained in the preceding paragraphs as if set fully herein.

131.    Defendants Pace and Wald discriminated against Plaintiff in the terms, conditions
and privileges of his employment on the basis of his gender and retaliated against him in
violation of the New York State Human Rights Law ("NYSHRL"), New York Executive Law §§
290-301.

132.    Defendants subjected Plaintiff to a severe and pervasive hostile work environment
and failed to address or remedy the sexual harassment.

133.    Defendants violated New York State Human Rights Law ("NYSHRL"), New York Executive Law § 290 *et seq*.

134.    Defendants conduct was intentional, willful, deliberate and in callous disregard of Trent's rights.

135.    As a result of defendants' discriminatory acts, Plaintiff has suffered pain and suffering and severe emotional distress.

136.    Plaintiff is entitled to all legal and equitable remedies available under the NYSHRL.

## **Count IV**

### *The New York City Human Rights Law - Sexual Harassment Against Pace and Wald*

137.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs as if set fully herein.

138.    Defendants Pace and Wald discriminated against Plaintiff in the terms and conditions of his employment on the basis of his gender and retaliated against him in violation of the New York City Human Rights Law (the "NYCHRL"), N.Y. City Admin. Code §§ 8-101 – 8-

139.    Defendants subjected Plaintiff to a severe and pervasive hostile work environment and failed to address or remedy the sexual harassment.   Defendants' actions violated New York City Human Rights Law (the "NYCHRL"), N.Y. City Admin. Code § 8-101*et seq*.

140.    Defendants acted with malice and/or reckless indifference to Trent's statutorily protected rights.

141.    As a result of defendants' discriminatory acts, Trent has suffered pain and suffering and severe emotional distress.

142.    Trent is entitled to all legal and equitable remedies available under the NYCAC.

## Count V

### *New York State Human Rights Law – Aiding and Abetting Against Wald*

143.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs as if set fully herein.

144.    By the acts alleged here, Wald is liable for aiding and abetting the illegal acts of Defendant Pace in violation of the New York State Human Rights Law, N.Y. Exec. Law § 296(6).

## Count VI

### *New York City Human Rights Law – Aiding and Abetting Against Wald*

145.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs as if set fully herein.

146.    By the acts alleged here, Wald is liable for aiding and abetting the illegal acts of Defendant Pace in violation of the Administrative Code of the City of New York § 8-107(6).

## Count VII

### *Intentional Infliction of Emotional Distress Against Pace and Wald*

147.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs as if set fully herein.

148.    Defendants committed extreme and outrageous conduct by engaging in and/or allow sexual harassment and retaliation against Plaintiff.

149.    Defendants acted willfully and/or recklessly.

150.    As a direct and proximate result of Defendants actions, Plaintiff suffered severe emotional distress.

151.    Defendants' actions and omissions warrant an award of punitive damages.


## Count VIII

### *Negligent Infliction of Emotional Distress Against Pace and Wald*

152.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs as if set fully herein.

153.    As his employer, defendants had a fiduciary duty towards Trent to ensure that his work environment did not subject male employees to discrimination, harassment or retaliation, all of which hold the potential of causing deep emotional harm in the event of a breach.

154.    Defendants had a duty to care for Trent's well-being.

155.    As alleged above, defendants negligently breached the duty they owed to Trent.

156.    As a direct and proximate result of defendants' breach, Trent suffered severe emotional distress and trauma alleged above.

157.    It was reasonably foreseeable that defendants' actions and omissions described above would cause genuine and substantial emotional distress and mental harm to the average male employee, including Trent.

158.    Defendants actions and omissions warrant an award of punitive damages.


## Count IX

### *Negligent Supervision and Retention (against defendant Pace University)*

159.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs as if set fully herein.

160.    Pace was under a duty to exercise reasonable care in the supervision and training of its employees, including Wald, with respect to the risk of harm posed to its employees, and particularly its male employees, which reasonably could result from a failure to ensure the creation and maintenance of a work environment free from discrimination, harassment and retaliation.

161.    Pace knew and had reason to know it had the ability to control Wald with respect to her relations with direct and indirect subordinates that could result in discrimination, harassment or retaliation, and knew or had reason to know of the necessity and opportunity for exercising such control.

162.    Pace, through it acts and omissions, breached the duty described above that it owed to Trent.

163.    As a direct and proximate result of Pace's breach of duty, Trent incurred the damages and injuries described above.

164.    Pace's conduct was malicious, wanton, willful, oppressive and exhibited a reckless indifference to Trent's rights.


## JURY DEMAND

Trent demands a trial by jury as to all issues so triable.


## PRAYER FOR RELIEF

Wherefore, Plaintiff, Scott Trent, respectfully prays that the Court:

a.   adjudge, decree and declare that defendants have engaged in illegal gender discrimination and retaliation, and that the actions and practices of defendants complained of herein are violative of Trent's rights under Title VII, Title IX, the NYSHRL, and the NYCHRL;

b.   order defendant Pace to provide appropriate job relief to Trent;

c.   enter judgment in favor of Trent and against defendants for all available remedies and damages under law and equity, including, but not limited to, prejudgment interest, back pay, front pay, compensatory and punitive damages for past and future mental anguish and pain and suffering, in an amount to be determined at trial;

d.   compensatory and punitive damages in an amount to be determined at trial;

e.   order defendants to pay the attorney's fees, costs, expenses and expert witness fees of Trent associated with this case;

f.   grant such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable; and

g.   retain jurisdiction until such time as the Court is satisfied that defendants have remedied the unlawful and illegal practices complained of herein and are determined to be in full compliance with the law.

Dated: New York, New York
        January 1, 2020

                                        Submitted,

                                        *R. S. Blank*

                                        Roger S. Blank, P.C.
                                        Attorney for Plaintiff, Scott Trent
                                        387 Park Avenue South, 5th Floor
                                        New York, New York 10016
                                        917-882-2133
                                        RogerBlankEsq@mac.com