1:20-CV-00005

# Exhibit B

**NEW YORK STATE DIVISION OF HUMAN RIGHTS**

_____x

SCOTT TRENT,

                            Complainant,                        **COMPLAINT**

-against

                                                  **RECEIVED**

PACE UNIVERSITY and FREDERICA "FREDDI" WALD.

                              **DEC 31 2019**

                           Respondents.                  NYS DHR
                                         Upper Manhattan Regional Office

_____x

        Pursuant to Subtitle J Division of Human Rights Part 464.4, Complainant, Scott Trent

("Trent"), by and through his attorney, Roger S. Blank, P.C., hereby brings a series of claims

against Respondents, Pace University ("Pace") and Frederica "Freddi" Wald, ("Wald")

(hereinafter collectively referred to as, "Respondents"), located at One Pace Plaza, New York,

New York 10038 with unlawful discriminatory practices relating to employment in violation of

Article 15 of the Executive Law on the basis of gender discrimination and retaliation, of which

the following is a statement:

### <u>NATURE OF ACTION</u>

        1.     Plaintiff Trent brings this action seeking redress because he was continually

subjected to sexual harassment and retaliation beginning in May 2014 and ending on August 22,

2017, when he was terminated for refusing to have a sexual relationship with his boss,

Respondent Wald.  Trent was continually subjected to sexually suggestive comments,

intimidation, unconsented to sexual touching and retaliation for refusing to submit to and gratify

the sexual demands of Respondent Wald while Trent was employed by Respondent Pace.

2.      Respondent Wald was a senior employee of Respondent Pace and was entrusted by Respondent Pace with significant authority in the workplace.

3.      At all times relevant to this action, in violation of federal, state and local laws and regulations, Respondents created, fostered, promoted and perpetuated policies and practices that resulted in the creation of a work environment ravaged with frequent, pervasive, unwanted sexual comments, advances, requests and other similar harassing conduct, and retaliation for same when it was rebuffed by Trent.

4.      As a result of this conduct, Respondent s Pace and Wald discriminated against Plaintiff Trent.

5.      As a result of this conduct, Trent brings this complaint pursuant to Title VII of the Civil Rights Act of 1964 § 7, 42 U.S.C. § 2000e et seq (1964) ("Title VII"), Title IX, Education Amendments of 1972, 20 U.S.C. § 1681-1682, subpart E, §106.51 ("Title IX"), the New York State Human Rights Law, N.Y. Executive Law § 290 *et seq.* ("NYSHRL"), the New York City Human Rights Law, and N.Y. Administrative Code § 8-101 *et seq.* ("NYCHRL"), seeking all damages available at law and in equity under those statutes, including but not limited to applicable liquidated damages, front pay, back pay, unpaid vacation and other leave pay, punitive damages, interest, attorneys' fees, and costs.

## VENUE AND JURISDICTION

6.      The Division has original jurisdiction to hear this Complaint and adjudicate the claims stated herein under New York State Executive Law § 296, and the New York City Administrative Code Title 8, Chapter 1 §8-107(1)(a), to redress and enjoin the discriminatory practices of Respondents.

**PARTIES**

7.     At all times relevant to this action, Plaintiff Trent was an employee of

Respondents Pace and Wald.

8.     Respondent  Pace University is an educational institution with its principal place

of business within the District.

9.     Respondent  Wald served as Vice President for Marketing & Communications

and Chief Marketing Officer, thus an agent of Pace in a senior management position at Pace.

10.     Trent was employed by Respondents as Executive Director of Media Relations.

Wald was the manager of the department in which Trent was employed.

11.      Respondents have offices located at One Pace Plaza, New York, N.Y. 10038.

12.     At all times relevant hereto, Respondent  Pace was Plaintiff's employer within the

meaning of the NYSHRL § 292 and NYCHRL § 8-102.

13.     Upon information and belief, at all time relevant to this complaint, Respondent

Wald was an employee of Pace.

14.     The acts set forth in this Complaint were authorized, ordered and/or done by

Respondents', officers, agents, employees and/or representatives while actively engaged in the

management and operation of Respondents' business.

*Plaintiff*

15.     Trent is an adult male individual residing in the State of New York, he was

employed by Respondents from on or about May 1, 2014 until August 22, 2017, when he was

terminated.

*Respondents*

16.     Pace is a not-for-profit institution of higher education existing under the laws of the State of New York with its principal place of business at One Place Plaza, New York, New York 10038 within this judicial district.

17.     During the relevant time period Wald was an individual engaged in business in this judicial district. Wald is sued individually in her capacity as a Senior Manager and agent of Pace.

18.     On information and belief, Wald resides at 7 19th Street, New York, New York 10003 in this judicial district.

19.     On information and belief, during the relevant time period, Wald in her capacity as a Pace supervisory manager, controlled significant functions of Pace.  She determined the work assignments, supervised employees, including Trent, promoted Pace employees, established employee schedules, had the authority to hire and terminate employees, was responsible for marketing Pace to the public, including but not limited to attracting prospective students on behalf of Pace and growing the number of enrolled students.

## FACTUAL ALLEGATIONS

### RESPONDENTS REPEATEDLY SUBJECTED PLAINTIFF TO A HOSTILE WORK ENVIRONMENT, SEXUAL HARASSMENT AND GENDER BASED DISCRIMINATION

20.     On or about May 1, 2014 Trent was hired by Pace as Executive Director of Media Relations.

21.     From the onset of Trent's employment and continuing through his termination on August 22, 2017 Wald exhibited and made her sexual interest in Trent known to Trent and his co-workers.

22.     Beginning in Trent's first week at Pace, and continuing during the entirety of Trent's employment with Pace, Wald would, in closed door meetings with Trent in her office, his office and office conference rooms would have her blouse revealingly unbuttoned and position herself so that Trent could observe she was not wearing undergarments either above or below the waist.  Wald at times would sit in position across from Trent exposing herself, and would at other times sit next to Trent and touch his leg to grab his attention wherein he would then observe her hiked up skirt or her unbuttoned blouse.  This occurred hundreds of times on a regular and consistent basis, both in the office and during outside events.

23.     The aforementioned activities engaged in by Wald made Trent feel uncomfortable and embarrassed.  Trent was subject to rumor and speculation by his collogues as to Wald's obvious sexual obsession with Trent.

24.     Wald regularly initiated conversations regarding sex, relationships, her interest in experimenting with women, including group sexual encounters, and other topics wholly inappropriate in a work setting with Trent.

25.     Wald would wear revealing attire at the office, then lean unnecessarily close to Trent balancing a hand on his shoulder to read information displayed on his computer screen.

26.     At Pace sponsored events Wald routinely made inquiries into Trent's personal life and sexual history.

27.     Wald repeatedly stated to Trent in sum and substance that he would succeed her in her position, provided that he pleased her, satisfied her cravings and made up for the

deficiencies she was experiencing in her marriage.

### *The Marriage Counseling Inquiry*

28.     Starting in May 2014 and on multiple occasions Wald unsolicitedly informed Trent that she was unhappily married, facts about her husband's infidelity and how she wanted to pursue marriage counseling with her husband, however, he refused to participate.

29.     Beginning in November 2016 and continuing through July 2017, Wald repeatedly requested that Trent replace her husband as her sexual confidant and participate in marriage counseling with Wald as her "surrogate" husband.  Trent repeatedly rejected such requests.

30.     In the spring of 2017 Wald overheard Trent conversing with colleagues about outings and events that had taken place the previous evening and his own comments about dinning at a Brooklyn Heights restaurant.  Wald interjected, although not a party to the conversation, that she wanted to go on a "date night" with Trent like she had just over heard him describing.

### *The 2015 Office Christmas Party*

31.     During the 2015 office Christmas Party Wald displayed inappropriate levels of sexual affection by standing behind Trent while he was in a seated position and draping her arms over Trent's shoulders so that her hands were on his chest, rocking back and forth and rubbing against him from behind.  Wald indicated she liked his suit and asked what brand it was as she was rubbing her hands across the fabric.  Wald indicated to other Pace employees present that Trent was the best dressed in the office, and how Wald found it attractive that Trent put effort into his personal appearance and presentation.  Wald also made the comment that Trent smelled

good to her and she then bent down and smelled Trent's hair.   Wald also followed up with that she could always tell when he was in the office from the smell of his cologne.  She asked him the name of the cologne and how to spell it, Gauthier, after Trent informed her, she was unable to reiterate it back and stated in sum and substance that she had too much to drink to remember that.  At the conclusion of the evening a group photo was taken during which Wald unsolicitedly and without warning kissed Trent on the cheek during the photo.

32.     On information and belief Respondents Pace and Wald have a copy of the aforementioned photo.

33.     Trent attempted to deflect her sexual advance so as not to make a scene at the office Christmas party, nor to suffer the future wrath of Wald which would reveal itself when she felt her demands were not being addressed as she so desired.

34.     As a result of Wald's actions, Trent felt sexualized, emotionally stressed, overwhelmed, embarrassed and annoyed.  Trent was worried for his reputation, that other staff members believed that he was having a sexual relationship with his boss, Wald, when in fact no such relationship existed nor was desired by Trent and in fact was affirmatively rebuffed by Trent.

### *The 2016 Office Outing Threesome Inquiry*

35.     At December 21, 2016 Office Outing located at the Beekman Hotel, Wald expressed to Trent and others present, her interest in having a sexual encounter with a woman. She also questioned Trent, and others present about their past sexual experiences, specifically whether they ever engaged in sexual activity with multiple partners at the same time, colloquially referred to as a "threesome."

36.    After Wald departed the aforementioned event, Trent spoke with Pace Assistant Vice President, Leila Franchi and stated "I feel dirty" in reference to being questioned by Wald as he was.  On information and belief, AVP Franchi, is a mandatory reporter under law and Pace policy.

37.    In or about May/June of 2016 and August/September 2016, Trent received two Facetime calls from Wald that when opened revealed Wald nude the first time and barely clothed the second time.  Both times, Trent immediately terminated the calls and would not accept, answer or return any Facetime call thereafter.

38.    Trent was startled, shocked and repulsed at seeing his boss nude.   It created feelings of anxiety and fear regarding the stability of his employment since he knew he would never engage in the relationship Wald was making every effort to initiate.

39.    As a result of the stress these calls caused Trent, he began the habit of covering up the inward facing lens of his mobile phone camera with painters' tape so that in the event Wald would attempt such behavior again she would be unable to determine if Trent was able to visually receive such a face time call to discourage any future attempts.

40.    For Trent's birthday in July 2016, Wald gave Trent a bottle of Veuve Clicquot champagne.  The gift was presented in a powder blue gift bag and accompanied by a handwritten note that read, "We'll celebrate later."

41.    In December 2016, Wald called a handful of staff into Trent's office and presented him with a set of cufflinks.  In the presence of other staff, she detailed at length how and where she had selected them, and insisted Trent provide her with "a personal lesson on how to put these on and take them off."  She then directed him to verbally instruct her as she put the cufflink on his shirt-cuff and then removed it.

### *The Request to Meet at a Hotel Text*

42.    In late 2016 Wald texted Trent and asked to meet her at a hotel for a sexual

liaison.

> Trent:  "Freddi, this is NOT going to happen. Go sober up and I'll forget this
>         happened."
> Wald:      "it's an amazing hotel. Meet me there.. We'll have fun Scott!"
> Trent:  "NO MEANS NO, FREDDI! You've got to stop this!"
> Wald:      "you know you want this scott! i know you feeel it.  we.ve wanted this
>         for a long time (*insert heart emoji here*)" *(ending with a heart emoji*
>         *rather than period after the word time) Spelling and capitalization*
>         *appear as in the original.*

### *September 2016 University Relations staff outing at the Gild Hall Hotel*

43.    Mrs. Wald insisted on sitting next to Trent.  She proceeded to constantly touch

him, by placing her hand on his hand and leg throughout the two-hour event.

44.    At the conclusion of the aforementioned Gild Hall staff event, Wald, pressured

Trent to remain and have drinks with her at the hotel bar, wherein she discussed the deficiencies

in her marriage, made blatant sexual overtures, and again pressured Trent to join her in getting a

room at the hotel for the purposes of a sexual encounter.

### *The Sexual Seduction Lunch at the Beekman Pub*

45.    On October 6, 2016, Wald took Trent under the guise of a business lunch to the

Beekman Pub in close proximity to Pace.

46.    Wald selected a very private booth, in the back private room, where there were no

other patrons at the time.

47.    Wald attempted to steer her interaction with Trent toward an intimate, physical

relationship.

48.    Trent rejected Wald's advances, in response, Wald informed Trent that his

employment was terminated.

49.    When Trent and Wald returned to their office, Trent began to pack his things and inform colleagues he had been terminated.

50.    Wald subsequently told Trent to wait, as she had changed her mind.  She then choreographed his interaction and email exchanges with Human Resources Assistant Vice President, Betsy Garti, to conceal her motive and the true circumstances of what had occurred, and explain to the staff why Trent had announced a termination.

51.    Trent, desperate to save his job, complied with Wald's instructions and wrote a letter to Wald indicating how important his job was to him.

52.    Wald later apologized to Trent for her actions, re-hired him that evening and repeatedly ordered him not to disclose or discuss what had happened to any University Relations staff or other Pace employees.

53.    Wald's efforts to seduce Trent under the guise of a business lunch left Trent shaken, depressed, anxious, and grappling with the disheartening prospect of having to engage in sexual relations with his boss as a condition of keeping his employment.

54.    Later in October of 2016 after the aforementioned Sexual Seduction lunch at Beekman Pub and the events thereafter, in a highly visible and hostile act of retaliation for Trent spurning Wald's sexual advances, Wald took away Trent's executive office, office furniture, and essential equipment including but not limited bookcase, issued a desk half the size, from previously assigned, reduced two computer screens to one, there was insufficient space to store files in his new smaller office which required the use of outside unsecured filing cabinet space. Despite his duties and position as the second ranking member of University Relations at the time, Wald relocated Trent to a windowless office less than half the size, in an area occupied by entry-

level and support staff.  She then awarded Trent's large vacated office to her assistant, an administrative support employee.

55.    Wald's retaliatory action made it impossible for Trent to conduct confidential meetings or telephone calls and protect sensitive material and confidential files.

### December 2016 Art Gallery Incident

56.    At a December 1, 2016 art gallery event, located on East 79th street in Manhattan, to which Wald insisted that Trent to accompany her to, Wald became quickly and noticeably intoxicated, groping Trent repeatedly, and at one point, following him into the bathroom.  Her efforts to engage him in sexual activity were thwarted by a University Relations staff member who Trent had arranged to accompany him to the event for that express purpose.  At one point, Wald remarked, "No one will be having sex in that shower tonight!"  Shortly after, Trent discovered that the shower in the gallery bathroom was being used as temporary storage for framed artwork.

### The December 2016 University Relations Holiday Party

57.    At the Christmas Party, Wald made very open, obvious and aggressive sexual advances toward Trent.  Such as removing Trent's tie and unbuttoning his shirt in full view of other University Relations staff.  Wald seductively and aggressively groped his chest and buttocks.  Wald also pressed herself against Trent and put her hand and arms around his body. During this interaction between Trent and Wald, Wald had in her possession a miniature red Santa hat and stated in sum and substance to Trent, that although he doesn't wear hats on his head, does he wear hats on his little head?  It was obvious to Trent Wald was referencing Trent's

genitalia.  Wald also likened the Santa hat size and shape to a diaphragm (female contraceptive device).   Wald then expressed to Trent that she no longer had to use diaphragms anymore, which Trent construed as an unmistakable sexual overture.

58.   As a result of Wald's behavior, Trent was repeatedly approached by other University Relations staff and other Pace employees inquiring about whether he and Wald were engaged in a sexual relationship.

59.   As a result of Wald's actions, Trent became the subject of ridicule, gossip, and speculation by other University Relations employees about his relationship with Wald, his supervisor.

60.   As a result of Wald's actions at the 2016 Christmas party Trent felt humiliated, embarrassed, fearful of incurring Wald's wrath in rejecting her overtures.  In response to Trent rebuffing Wald during this event Wald ridiculed Trent verbally in front of Trent's co-workers and other Pace staff and administrators; Wald also ridiculed him again in an office email sent at 9:17am the next day to department staff.

61.   In January 2017, Wald called Trent and another male University Relations staff member into her office, requiring them to pose for a photo which Wald that digitally transmitted to a woman Wald identified as her best friend.  In that communication and again in Wald's office two days later, Wald referred to Trent and the other male employee as her "boyfriends" and "boytoys."  Wald subsequently posted that photo to her personal social media accounts.  This same behavior repeated itself between Wald and Trent in June 2017, wherein Wald again called Trent along with the same other male employee into her office, photographed them and again referred to them as her "boyfriends" and "boytoys."

62.     The aforementioned "boyfriends" and "boytoys" incidents caused Trent to feel demeaned, sexualized and like he was "piece of meat."

63.     On January 16, 2017, Wald sent Trent an email stating she had some "crazy stuff" she wanted to share with him privately, by email, text message, and on the phone.  Wald later that evening telephoned Trent and shared sexually explicit gossip about other Pace employees including but not limited to the incoming President, Marvin Krisolv.

64.     On the evening of Friday, January 27, 2017, Wald sent a number of emails to Trent from four separate accounts.  In one of those e-mails, specifically sent after 8:00pm, Wald said "Getting thru my cocktail – then will write…watchout!!"

65.     Later that evening of January 27th Wald sent another email at 9:34pm and opened with *"I really wanted to apologize to you and beg you not to post this exchange on FB (Facebook)."*  She went on to say that with Trent, she's *"like a maniacal dog not letting go of a bone"* and that Trent *"did not deserve my crazy mood and wrath."*  Wald admitted to her *"obsessiveness"* with Trent and predicted their *"friendship"* and *"interesting feelings"* would *"last wayyyyyy beyond Pace."*  She also admitted to feeling a *"shocking, mysterious, heartbreaking, repressed, raging feeling"* she struggles with when *"losing a close friend and lover."*  In that same email Wald made note Trent's political affiliation and her willingness to forgive him for it because his sartorial choices "*upgrades your brand and redeems your worth to me*."

66.     Wald had a self-professed sexual obsession with Trent, that she voluntarily revealed, admitted and acted upon at every opportunity; in person, via email, telephone and text.

67.     Wald was so relentless in her pursuit that Trent found it difficult to escape her contact via text, telephone and email even during periods of time he was away from Pace.

Wald's conduct occurred on nights after working hours, on weekends at all hours of the day and night, on holidays and even on vacation under the limited opportunity Trent had to actually take vacation time.

68.    During one of Wald's obsessive incidents, Trent was traveling underground for approximately 20 minutes on the New York City subway when Wald was attempting to contact him via telephone and text.  When Trent exited the subway he reestablished telephone cellular service and received contact from Wald, who verbally terminated Trent due to his period of unavailability, but within the span of approximately 30 minutes rescinded his termination but order him to limit his travels to surface transportation going forward.

69.    Wald's obsessive behavior caused Trent embarrassment, anxiety, depression, emotional stress and impacted his personal outside relationships.  As result of the emotional toll Wald's behavior took on Trent, he began to have intimacy issues with his then romantic partner.


*The March 2017 Accidental Student Death by Autoerotic Asphyxiation*

70.    Upon learning of a student death by autoerotic asphyxiation (a state of asphyxia intentionally induced so as to heighten sexual arousal during masturbation[1]), Trent discussed with Wald and Assistant Vice President Leila Franchi how Pace should respond to the press once and if the incident was covered by the media.

71.    After being briefed on the aforementioned incident, Wald, in the presence of AVP Franchi, inquired of Trent if he had ever engaged in such masturbatory activity or if he knew others that did and whether he knew if it was a common practice among men in general.

72.    During the entirety of Trent's employment with Respondents, Wald expressed to

---

[1] Merriam-Webster Dictionary definition.

Trent that her husband had experienced a declining interest in sexual activity with her, and preferred to watch.  Wald expressed her resulting frustration with the situation between her and her husband and referenced the use of sex toys and vibrators.

73.     During April of 2016, Wald entered Trent's office and commented on a movie prop of a grenade that he had displayed on his bookshelf and inquired if the item was a vibrator sex toy.  At the time this occurred Trent was on a conference call with a New York 1 news reporter and had muted the telephone call.  When Trent unmuted the telephone call, Wald in the background began to mimic the buzzing sounds of a vibrating sex toy.  This unprofessional behavior caused Trent embarrassment and worry that it would have compromised Trent's relationship with that reporter and that media outlet, thereby affecting his ability to perform his job functions and liaise with members of the media.

## The June 2017 Spirit of Pace Awards ("SOPA") Event

74.     In June of 2016 at the Museum of Natural History Pace held its annual fundraising dinner.

75.     Wald insisted that Trent sit next to her at her table, pulling him away from a conversation he was engaged in and leading him to her table.  Wald openly stated that she never brought her husband to these events so as "not to spoil her fun."  Approximately ten other people were seated at the table including other senior staff members of Pace.

76.     Throughout the evening Trent and others observed Wald consume alcohol, she became load and animated.  She insisted on orchestrating group photos in which she insisted Trent be at her side, where she would drape her arm possessively around Trent, making Trent feel like chattel.

77.     Wald engaged in loud sexually charged conversation with Trent and others seated at the same table.  She made derogatory comments about other Pace staff, and expressed surprise and disapproval when informed that a senior staff member was in a biracial relationship.   During this time Wald was seated next to Trent she was rubbing Trent's leg, touching his arm, offered Trent alcohol which Trent took to be an effort to lower his inhibitions in order to increase the likelihood of a sexual encounter with Wald.  She pulled his hand on to her lap under the guise of examining the cufflinks he was wearing

78.     Also present, although seated at a neighboring table was Robert Keating ("Keating"), Pace's Vice President for Strategic Initiatives and Senior Advisor to the University President.

79.     On information and belief, Vice President / Senior Advisor Keating, is a mandatory reporter under law and Pace policy.

80.     At point in the evening a Pace staff member informed Trent that Keating wanted to speak with Trent.  Trent went over to speak with Keating and Keating state that Wald was "out of control" and her sexually focused conversation was inappropriate.  Keating asked Trent to rein Wald in and restrict her ability to order more wine.

81.     Later Keating approached Trent's table himself, leaned into Wald and stated, "My dear, I'm suspending the First Amendment at this table.  We have guests whose checks haven't cleared yet."

82.     Later during the event Trent ran into Keating, and Keating stated to Trent, "My boy, I don't envy you, herding feral cats in estrus."[2]

---

[2] Oxford Dictionary: A recurring period of sexual receptivity and fertility in many female mammals; heat.

83.     Trent left the event feeling emasculated and despondent, dreading the calls and texts that he knew would soon begin receiving from her.  The event marked another example of Wald's sexual harassment, hostile work environment she maintained, the senior management's awareness of Wald's conduct, and its refusal to do anything about it.

### *Pattern and Practice of Gender-based Discrimination by Wald and Pace*

84.     In an October 13, 2016 memo from Mrs. Wald to the Operations Committee, Associate Vice President for Human Resources, Betsy Garti, the Management Council and the School Marketing Directors, Wald announced her reorganization of University Relations, including eight (8) staff promotions that were made as part of the reorganization.  All the promotions went to female members of the staff.

85.     Of the eight (8) staff members forced out of the University Relations or outright terminated by Wald between May 1, 2014 and Trent's termination on August 22, 2017, seven (7) were male—including Trent.

86.     Of those eight (7) male employees who involuntarily left University Relations, all but one had been replaced with new female employees.

87.     On information and belief, after Trent's termination, he was replaced as Executive Director of Media Relations by a female who possessed substantially less experience, yet was paid more than Trent was paid.

88.     On information and belief, Pace's Assistant Vice President, Betsy Garti, of Human Relations was aware of and implicitly endorsed the gender discrimination perpetrated by Wald since terminations, hiring and promotions were processed through AVP Garti's department which coordinated and oversaw all hiring, transfers, promotions and terminations at Pace.

89.     Wald enforced gender discrimination in University Relations by her nominations for "Setting the Pace" and "Fast-Track Management," two intensive, year-long management development programs offered by the university and designed to cultivate leadership ability. Wald promised to install Trent as her successor provided he "satisfied (her) needs sufficiently." Wald ultimately refused to nominate Trent or any male employee to participate in the leadership programs.

90.     Wald would submit just one nominee per program each year, and she insisted the nominees be female.  In retaliation for rejecting her sexual advances, Wald refused Trent's requests to participate in "Setting the Pace" and "Fast-Track Management" in 2014, 2015 and 2016, and instead offered nominations for both programs to his female subordinate in 2016, and other female members of University Relations in the other years, including to female members of University Relations whom had not expressed any interest in participating in the training programs over males who had expressed an interest.

91.     In October 2016, Wald retaliated against Trent for rejecting her sexual overtures by taking away his executive office and giving it to a lower level female employee; further detailed in paragraph 44.  From that point until relocating to new offices in June 2017, all University Relations executive offices were occupied by female staff even though there were higher ranking titled male employees, such as Trent in the department.

92.     On information and belief, female University Relations staff members were allowed to work flex hours, leave early, work from home, and use their vacation and personal time at will.  Trent was repeatedly denied this, with leave requests denied, limited, or approved then rescinded, and required to work nights, weekends and holidays.  On information and belief, female staff members were not similarly restricted.  At the time of his termination, Trent had

accumulated five (5) months of paid leave that he wasn't allowed to use, nor has he been compensated for totaling approximately $75,000.00.

93.     Wald routinely assigned Trent projects unrelated to his actual job responsibilities, including extensive work on personal projects of Wald's, unrelated to her Pace University position, all the while still holding Trent responsible for his Pace University duties and deadlines.   On information and belief, Wald did not require female members of University Relations staff to work on projects outside of their responsibilities or unrelated to the university.

94.     Wald required Trent to be available at all hours of the day and night, and on weekends, while on information and belief, female members of his department were only required to work 35-hour work weeks.

95.     On information and belief, males in the University Relations department were diminished and verbally disparaged, were given disproportionately higher volumes of and more difficult work, and with shorter deadlines.  Female members of University Relations were not required to be available after hours or on weekends, as Trent was.

96.     So pervasive was Wald's sexual harassment, hostile work environment and relentless work schedule directed at Trent during his tenure at Pace, that Wald's unrelenting behavior caused Trent so much stress that he sought professional psychological counseling.


**RESPONDENT PACE FAILED TO TAKE STEPS TO PREVENT AND REMEDY THE HOSTILE WORK ENVIRONMENT AND SEXUAL HARASSMENT PERPETRATED BY WALD**

97.     After receiving the aforementioned e-mail of January 27, 2017 Trent submitted a copy of same via interoffice mail to Pace Assistant Vice President, Betsy Garti, of Human

Resources.  Thereafter, Trent contacted AVP Garti to schedule a meeting with her to discuss Wald's unrelenting sexual obsession with and harassment of Trent.

98.     On information and belief AVP Garti has a personal friendship with Wald.

99.     AVP Garti would not make herself available to meet with Trent to address Wald's sexually obsessive and harassing behavior directed at Trent.

100.    Although, Trent was never afforded the opportunity to meet with AVP Garti of Human Resources, Trent did have regular conversations with Robert Keating, Pace's Vice President for Strategic Initiatives and Senior Advisor to the University President.  During these conversations, Mr. Keating was made aware of Wald's behavior directed at Trent.  During those conversations, Mr. Keating would refer to Wald as "that lunatic" and "that nutjob."  Trent was also present during occasions were Mr. Keating would describe Wald to other senior staff at Pace using the same terminology as he had expressed to Trent.

101.    On information and belief, Vice President / Senior Advisor Keating, is a mandatory reporter under law and Pace policy.

102.    Trent also had regular conversations with Pace Assistant Vice President of Government and Community Relations Venessa Herman, regarding Wald's behavior towards Mr.Trent.

103.    On information and belief, AVP Herman, is a mandatory reporter under law and Pace policy.

104.    Pace Associate Director for University Relations Cara Cea, was a first-hand and frequent witness to Wald's harassment, discrimination and retaliation directed at Trent and the hostile work environment Wald fostered and maintained.

105.    On information and belief, Associate Director Cara Cea, is a mandatory reporter under law and Pace policy.

106.    Respondent  Pace knew or should have known about Wald's sexual harassment of Trent.  Senior management was aware of but neglected to take any reasonable or appropriate corrective action.

### *Trent's Termination*

107.    On August 22, 2017, Trent was called into a meeting with Wald and Associate Vice President for Human Resources, Betsy Garti and terminated.

108.    Trent was not provided a reason for such action in written form as is the policy and practice of Pace.  Trent was only informed by AVP Garti that said action was being taken due to "subpar performance."

109.    Trent had never received any prior written notifications of any deficiency in his work performance, and in fact had received repeated written praise from Wald regarding the fulfillment of his employment duties.

110.    It is apparent that Trent's termination was a direct and proximate result of his continued rebuffing and refusal to gratify the sexual desires of Wald.

111.    Respondents actions violated Trent's rights under Title IV, Title IX, New York State Executive Law § 296, and the New York City Administrative Code Title 8, Chapter 1 §8-107(1)(a) to be free from gender-based discrimination in employment; to be free from an employment environment free of sexual harassment and retaliation.

112.    Based on the foregoing, Trent charges the Respondents with unlawful discriminatory practices relating to employment because of sex and retaliation in violation of New York State Human Rights Law (Executive Law, Article 15), section 296.  Trent also

charges Respondents with violating Title VII of the Civil Rights Act of 1964 as amended and Violations of Title IX of the Education Law.

113.    Tent has not yet commenced any other civil actions, nor does he have an action pending before any other administrative agency, under any state or local law, based upon these same unlawful discriminatory practices.

Dated: New York, New York
        December 31, 2019

Submitted,

Roger S. Blank, P.C.
Attorney for Plaintiff, Scott Trent
387 Park Avenue South, 5th Floor
New York, New York 10016
917-882-2133
RogerBlankEsq@mac.com

NEW YORK STATE DIVISION OF HUMAN RIGHTS

————————————————————————————x

SCOTT TRENT,

                         Plaintiff,                                            **VERIFICATION**

-against

PACE UNIVERSITY and FREDERICA "FREDDI" WALD.

                         Defendants.

————————————————————————————x

STATE OF NEW YORK    )
                             ) ss.:
COUNTY OF NEW YORK )

      SCOTT TRENT, being duly sworn, deposes and says that deponent has read the foregoing COMPLAINT and knows the contents therein; that the same is true to deponent's own knowledge, except as to those matters therein stated to be alleged on information and belief, and that concerning those matters, deponent believes them to be true. The sources of knowledge are my own information and knowledge.

                                                          _____
                                                           SCOTT TRENT

Sworn to before me this 31st Day of December 2019

_____
        Notary Public

JANICE S NORIAN
Notary Public - State of New York
NO. 01NO6399324
Qualified in New York County
My Commission Expires Oct 21, 2023